UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 13-40-ART-(5) |
| ) | |
| v. ) | |
| ) | **ORDER** |
| PATRICIA SOLOMON, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The defendant, Patricia Solomon, filed a motion to suppress statements she made to law enforcement during an interview. R. 246. She alleges that her statements must be suppressed under *Miranda v. Arizona*, 384 U.S. 436 (1966), because: 1) she says that she was in custody during the interview, and 2) officers failed to give her a *Miranda* warning until part-way through it. R. 246 at 5. Solomon also argues that the statements she made even after the *Miranda* warning were not voluntary. Thus, she argues, the statements should be suppressed under *Missouri v. Seibert*, 542 U.S. 600 (2004), and *United States v. Mahan*, 190 F.3d 416 (6th Cir. 1999).

Magistrate Judge Hanly A. Ingram filed a thoughtful Report and Recommendation ("R&R"), finding that Solomon was not in custody and her statements were voluntary. R. 429. Based on these findings, Judge Ingram recommended that the Court deny Solomon's motion to suppress. *Id*. Solomon filed a timely objection to Judge Ingram's R&R. R. 442. After reviewing Solomon's claims *de novo*, the Court agrees with Judge Ingram and, accordingly, will adopt his R&R as the opinion of the Court.

**BACKGROUND**

The following facts are not in dispute. On June 3, 2014, law enforcement raided the Wellness and Pain Center of Broward County ("PCB"), where Solomon was a physician's assistant. R. 246-1 at 1–2. Solomon was working at PCB that morning, and she remained there while law enforcement executed the search warrant. *Id.* at 2. Several hours after the raid began, federal agents interviewed her. *Id.* Solomon made several incriminating statements during this interview. *Id.* at 2–3. One of the interviewing agents, Officer Richard Dalrymple, read Solomon her *Miranda* rights part way through it. On November 5, 2014, Solomon was indicted for conspiracy to dispense and distribute oxycodone and alprazolam in violation of 21 U.S.C. §§ 84(a)(1) and 846. *Id.* at 1–2.

Some details of what happened during the law enforcement raid are in dispute. *See* R. 246-1. Indeed, the accounts of Solomon and Dalrymple conflict in three important ways. *See* R. 442-2 (transcript of the suppression hearing). First, Solomon testified that an agent told her she could not leave PCB during the raid, R. 429 at 3, but Dalrymple testified that no one would have said that to Solomon. *See* R. 442-2 at 25. Second, Solomon testified that Dalrymple failed to tell her she was not under arrest, while Dalrymple stated that he told all of the PCB employees that they were not under arrest. R. 429 at 3. Third, Solomon testified that Dalrymple threatened her during the interview, but he denies doing so. *Id.*

Faced with these conflicting facts, Judge Ingram had to assess the credibility of the witnesses. R. 429 at 2. Judge Ingram credited Dalrymple's version of the disputed facts and rejected Solomon's. *See id.* at 4–7. Judge Ingram based his decision on: 1) inconsistencies in Solomon's own testimony at the suppression hearing, 2) the finding that Solomon had a greater bias than did Dalrymple, and 3) evidence that Dalrymple testified candidly. *Id.*

Judge Ingram thus accepted the government's version of events. As a result, he found that Solomon was not in custody and that her statements were not coerced. Therefore, he ultimately held that her statements should not be suppressed. *Id.* at 7–14.

## DISCUSSION

The Court reviews *de novo* those portions of Judge Ingram's R&R to which Solomon specifically objected. *See Roach v. Chater*, 117 F.3d 1421, 1997 WL 330649, at *1 (6th Cir. 1997). The magistrate judge, as the fact-finder who sees and hears the witnesses, is uniquely situated to assess the credibility of the witnesses. Thus, this Court must "accord[] great deference to such credibility determinations." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

Solomon argues that Judge Ingram's credibility analysis was flawed for three reasons. First, she says that she did not testify inconsistently at the suppression hearing. Second, she says that Dalrymple's bias was at least equal to hers. Third, she says that Dalrymple had forgotten key information and was absent for some of the disputed events. R. 442 at 5–12. Solomon's arguments fail for the following reasons.

**I.      Judge Ingram did not err in finding Solomon's testimony to be inconsistent.**

Judge Ingram found that Solomon testified inconsistently about: 1) whether agents told her that she could leave PCB on the day of the raid, and 2) whether agents told her that she was not under arrest.

   A. *Whether Solomon Was Told She Could Leave PCB*

Judge Ingram found that Solomon testified inconsistently about whether law enforcement restrained her movements during the raid. Solomon testified that she was told

3

that she had to remain at PCB during the raid. *See* R. 442-1 at 58–59 ("A: I felt like I had to stay. Q: Did anybody tell you [that] you had to stay? A: Yes."). Yet during cross-examination, Solomon reversed course. For example, she was asked the question "you were never told you couldn't leave [PCB], were you?," to which she answered "[n]o." *Id.* at 57–58. Solomon also stated: "I was never told that I couldn't leave [PCB]." *Id.* at 61. Judge Ingram cited the above statements as evidence of Solomon's inconsistency.

Solomon claims that this alleged inconsistency was the result of a poorly worded question. Her argument focuses exclusively on the question "you were never told you couldn't leave [PCB], were you?" R. 442-1 at 57–58. Solomon contends that if one removes the double negative from the question it actually means "were you told you could leave?" Thus, Solomon's answer "no" was, according to her, consistent with her testimony that she was told that she had to stay. But Solomon's explanation fails to address the portion of her testimony where she acknowledged unequivocally that she was never told that she could not leave. *See* R. 442-1 at 61 ("Q: They never told you [that] you had to stay there, correct? . . . A: I was never told that I couldn't leave."). So Solomon's testimony is still inconsistent even if the Court accepts Solomon's explanation of one inconsistency from her testimony at the suppression hearing.

B. *Whether Solomon Was Told She Was Not Under Arrest*

Judge Ingram also found that Solomon testified inconsistently about whether law enforcement told her she was not under arrest. At the hearing, Solomon first claimed law enforcement said nothing about whether she was under arrest. R. 442-1 at 57 ("Q: And they also told you all that none of you were under arrest, correct? A: They didn't say that."). But later in the hearing, Solomon admitted that law enforcement told her that she was not under

4

arrest. *Id.* at 64 ("Q: And Special Agent Williams again told you that you weren't under arrest, didn't she? A: Yes."). This inconsistency led Judge Ingram to discredit Solomon's version of the disputed facts.

In her objection to Judge Ingram's R&R, Solomon claims that she was not inconsistent, but that she was instead just testifying about two different timeframes. R. 442 at 9. Solomon claims that officers neglected to tell her that she was not under arrest when they first entered the building. R. 442 at 8–9. But she acknowledges that officers told her that she was not under arrest at the beginning of her interview later that afternoon. *Id*. So Solomon argues that her statements were not inconsistent.

Solomon's own interpretation of her testimony, however, is internally inconsistent. When testifying about the interview with law enforcement, Solomon was asked if law enforcement "again told you that you weren't under arrest." R. 442-1 at 64. Solomon answered "yes." *Id*. The word "again" in this question implies that Solomon was previously told that she was not under arrest, thus contradicting Solomon's story that she had not been previously told that she was not under arrest. And even if the Court accepted that Solomon was consistent on this one particular point, the record as a whole contains sufficient evidence to conclude that Solomon testified inconsistently at the suppression hearing.

**II.  Judge Ingram appropriately considered Solomon's bias.**

Solomon argues that Judge Ingram should not have found that "[her] credibility was diminished because she had a personal bias in seeking suppression while . . . Dalrymple did not have any personal bias." R. 442 at 9. But "consideration of what a witness has to gain or lose from her testimony is an accepted part of the credibility determination." *United States v. Lockhart*, No. CRIM. 12-08-ART-(2), 2013 WL 1412338, at *4 (E.D. Ky. Apr. 4, 2013)

5

(citing Sixth Circuit Pattern Jury Instructions 1.07 (directing jurors to consider whether the witness had "anything to gain or lose from the case")). Judge Ingram appropriately weighed what the witnesses had to "gain or lose" from their testimony. He concluded that Solomon had an incentive to lie because she wanted her statements suppressed. R. 429 at 5. He concluded that Dalrymple had incentive to tell the truth because there would be negative consequences to his career in law enforcement if he were untruthful. *Id.* Solomon might be correct that Dalrymple had some bias at the suppression hearing. After all, Dalrymple did invest significant time and energy in the investigation. Yet Dalrymple's potential bias is slight—at worst, the statements he obtained from Solomon would be suppressed. In contrast, Solomon's potential bias is great—her very freedom is at stake in the case. Although these biases alone might not be sufficient evidence on which to base a credibility determination, these biases were just one of the many factors Judge Ingram considered in his analysis. *See* R. 429 at 4–5. Judge Ingram correctly took these biases into account.

### III.  Judge Ingram correctly found Dalrymple's testimony to be both credible and reliable.

Solomon disputes the weight Judge Ingram gave to certain aspects of Dalrymple's testimony. In his R&R, Judge Ingram found that Dalrymple's admission that, during the interview, he called Solomon "a drug dealer" bolstered Dalrymple's credibility because calling a physician's assistant a drug dealer might be viewed as "insulting and unprofessional." R. 429 at 5. Solomon argues that "the admission of unfavorable facts alone does not necessarily mean that a witness is telling the truth about everything." R. 442 at 10. Fair enough. Someone who tells the truth about one bad fact might not tell the truth about all bad facts. But such candor does make it more likely that a witness is being truthful. That is

6

the situation here: Dalrymple told the truth about an incident that reflected poorly on his professionalism. His candor is evidence of his credibility. Thus, Judge Ingram correctly incorporated Dalrymple's admission in his credibility analysis.

Solomon argues that she, too, admitted to negative facts in her own testimony. She claims that she was thus entitled to the same finding of increased credibility. R. 442 at 10. The negative fact that Solomon says she admitted to at the suppression hearing was that a law enforcement officer told her she was not under arrest. Yet, as discussed above, Solomon has testified inconsistently about whether she was told that she was under arrest. Because Solomon did not truly admit to the bad fact she puts forth, this argument also fails.

Solomon's final attack on Dalrymple's testimony is based on Dalrymple's memory of the events. First, Solomon contends that Dalrymple lacks credibility because he could not remember some details of the raid, such as the exact time that he entered the building. R. 442 at 10. Second, Solomon argues that Dalrymple did not observe all of the events that occurred that day.

Neither of these arguments is persuasive. First, Dalrymple remembers all of the relevant details. Although Dalrymple could not remember the exact minute that he entered the clinic, his testimony shows that he did have a well-formed memory of the events. For example, Dalrymple testified that the agents "didn't have [the raid time] set for a certain time[;]" instead, they planned to enter the clinic "based on when [Mr. Shumrak] pulled in." R. 442-1 at 7. Second, Dalrymple does not need to be able to testify to everything Solomon alleges occurred that day. Judge Ingram concluded that Dalrymple was a credible witness

based on the events to which he could testify. And crediting Dalrymple's account of the disputed facts was sufficient to determine the legal issues at stake.

In sum, Judge Ingram carefully considered the witnesses' credibility and reasonably chose to accept Dalrymple's version of the events. Because "[c]redibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted unless . . . [the district court judge] finds a reason to question the magistrate judge's assessment," this Court gives Judge Ingram's credibility assessment great weight. *United States v. Johnson*, No. 10–20176, 2011 WL 3844194, at *2, 2011 U.S. Dist. LEXIS 97577, at *6–7 (W.D. Tenn. Aug. 30, 2011). Judge Ingram based his credibility determination on sufficient evidence in the record, and Solomon has presented no reason for this Court to question his assessment. *See United States v. Gray*, 182 F. App'x 408, 411 (6th Cir. 2006) (upholding a court's decision to credit officers' testimony over defendant's even though officers' testimony was inconsistent because the officers' testimony "constituted a more plausible account of the events"); *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) (finding "no compelling reason to second-guess the magistrate judge's decision" to credit [a witness's] testimony even though the witness received cash payments for cooperation with the government and previously lied to law enforcement); *United States v. Jackson*, No. 2:14-CR-20023-SHL, 2015 WL 632011, at *4 (W.D. Tenn. Feb. 13, 2015) (upholding a magistrate judge's determination that "[d]efendant's testimony was simply not credible because it was full of inconsistencies and unlikely scenarios, and omitted too many important

details . . . [while] the officers' testimony was relatively consistent, more plausible, and more believable"). Accordingly, the Court adopts Judge Ingram's findings of fact.[1]

## IV.     Based upon the findings of fact, Judge Ingram reached the correct conclusions of law.

Solomon also claims that Judge Ingram reached the wrong legal conclusions. She claims that Judge Ingram should have held, as a matter of law, that she was in custody and that her statements were involuntary. R. 442 at 12–17. Solomon acknowledges that the alleged "legal error was based largely on the erroneous findings of fact." *Id.* at 12. The Court has already considered these "erroneous findings of fact" and determined that Solomon's objections are without merit. Thus, the Court applies the relevant law to the facts as found in the R&R. *See* R. 5-7.

Solomon's first objection is that Judge Ingram incorrectly held that she was not in custody as a matter of law. R. 442 at 12–15. "[T]he initial determination of custody depends on the objective circumstances of the interrogation," rather than the subjective views of law enforcement or the person being interviewed. *Stansbury v. Cal.*, 511 U.S. 318, 323 (1994). The Sixth Circuit has identified four factors that courts should consider when determining whether a person is in custody during a police interview: the place of the interview, the length and manner of questioning, the degree to which a person's freedom of movement was restrained, and the extent to which the person was told that they did not have to answer law

---

[1] Solomon submitted a brief after the suppression hearing arguing that her incriminating statements to law enforcement could not, as a matter of law, factor into Judge Ingram's credibility determination. R. 344. This Court need not address this argument because Judge Ingram explicitly excluded Solomon's incriminating statements to law enforcement from his credibility determination. R. 429 at 5.

enforcement's questions.[2] *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). Judge Ingram found that the circumstances of the interview meant that the first, second, and third *Panak* factor favored the government. R. 429 at 9–11. He found that the fourth factor favored Solomon since "no evidence suggest[ed] that Solomon was told she did not have to answer [law enforcement's questions]." *Id.* at 12. Given that the majority of factors favored the government, Judge Ingram held that "the totality of the circumstances and the *Panak* factors favor[ed] a finding that Solomon was not in custody." *Id.*

Solomon's objection to Judge Ingram's custodial analysis is without merit. The first and third *Panak* factors favor the government because agents interviewed Solomon at her place of work, agents told her that she was not under arrest, and agents did not limit her freedom to leave. *See United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (finding a defendant not in custody where he was not told he was under arrest, was not told that he could not leave, and was interviewed at his place of work). Although Solomon disputes Judge Ingram's finding on these *Panak* factors, she offers no authority to support her argument. *See.* R. 442 at 14. The second *Panak* factor also favors the government. Because Solomon's interview lasted a little over an hour and she was not threatened during it, no reasonable person would have, based on these facts, believed that she was in custody.[3] *See Mahan*, 190 F.3d at 422 (finding a 90-minute interview with law enforcement to be non-custodial); *see also Panak*, 552 F.3d at 467 (finding a one-hour interview "compare[d] favorably" with other non-custodial interviews). Although Solomon urges the Court to

---

[2] Solomon argues that Judge Ingram should have considered the additional factor of whether Solomon initiated contact with the police. Such an inquiry is not required by the *Panak* test. *See United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009).

[3] Solomon maintains she was threatened by Dalyrmple during the interview, R. 442 at 16. Judge Ingram rejected the argument that Dalrymple threatened Solomon. R. 429 at 14. The facts support his conclusion as explained in more detail below.

10

consider "the purpose of the questioning," and find for Solomon on this factor, R. 442 at 15, such an inquiry is not required by the *Panak* test. Thus, even if the fourth *Panak* factor favors Solomon, three of the four factors weigh in favor of the conclusion that Solomon was not in custody. For this reason, Solomon's objection fails. *See Panak*, 552 F.3d at 467 (finding a defendant was not in custody even though officers failed to inform her that she did not have to answer questions).

Solomon next objects to Judge Ingram's holding that her statements were voluntary. A confession is coerced only if the police engaged in activity that was (1) objectively coercive, (2) sufficient to overbear the defendant's will, and (3) the crucial factor that motivated the defendant to confess. *Mahan*, 190 F.3d at 422. Here, Judge Ingram found that Dalrymple never threatened Solomon. The Court has adopted that finding as its own. Solomon points to no facts suggesting that any of the officers did anything that could be described as "objectively coercive," much less sufficient to overbear her will or be the crucial factor in motivating her to confess. Hence, Solomon's confession was not coerced as a matter of law.

Solomon's final objection is that her statements should be suppressed under *Missouri v. Seibert*, which requires post-*Miranda* statements to be suppressed if the pre- and post-*Miranda* questioning are "integrated and proximately conducted." 542 U.S. 600, 613–614 (2004). To suppress a statement under that case, however, a defendant must first show that she was entitled to a *Miranda* warning to begin with. *See Seibert*, 542 U.S. at 608. Here, the Court has adopted Judge Ingram's finding that Solomon was never in custody and thus was never entitled to a *Miranda* warning. Therefore, *Missouri v. Seibert* is not applicable.

## CONCLUSION

Upon reviewing Solomon's objections *de novo*, the Court finds that Judge Ingram appropriately considered the credibility of each witness. He appropriately chose to credit Dalrymple's version of disputed events over Solomon's. Thus, the Court adopts Judge Ingram's factual findings. Based upon those facts, Judge Ingram correctly determined that Solomon was not in custody and her statements were voluntary. Judge Ingram's R&R is adopted in full.

Accordingly, it is **ORDERED** that the R&R, R. 429, is **ADOPTED** as the opinion of the Court. Solomon's motion to suppress, R. 246, is **DENIED**.

This the 17th day of September, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge